IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAFAEL REYNOSO & LISA REYNOSO,

                   Plaintiffs,                           No. 03:13-cv-01600-HZ

     v.

FIDELITY NATIONAL TITLE                      OPINION & ORDER
INSURANCE COMPANY,

                   Defendant.

Sandy N. Webb
LAW OFFICES OF SANDY N. WEBB, PC
0224 S.W. Hamilton Street, Suite 301
Portland, Oregon 97239

       Attorney for Plaintiffs

Matthew R. Cleverley
FIDELITY NATIONAL LAW GROUP
1200 6th Avenue, Suite 620
Seattle, Washington 98101

       Attorney for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiffs Rafael and Lisa Reynoso bring this breach of contract action against Defendant Fidelity National Title Insurance Company, contending that Defendant wrongfully denied Plaintiffs' claim under a title insurance policy issued to Plaintiffs by Defendant. Defendant requests that the Court judicially notice several documents and moves to dismiss for failure to state a claim. I grant Defendant's request for judicial notice to the extent that I judicially notice that Plaintiffs previously filed a complaint in Clackamas County which resulted in a General Judgment of Dismissal. I deny the motion to dismiss because accepting the allegations in the First Amended Complaint as true, Plaintiffs state a claim.

BACKGROUND

The facts are taken from the First Amended Complaint. Plaintiffs own real property in Estacada, Oregon pursuant to a statutory warranty deed recorded on May 20, 2010. First. Am. Compl. at ¶ 1. When they purchased the property, Plaintiffs purchased a title insurance policy from Defendant, bearing policy number 27-031-06-198718. Id. at ¶ 2.

When Plaintiffs' property was for sale, Karen Anderson-Tobin, who owns adjoining property, told the selling real estate agent that the driveway for Plaintiffs' property was not entirely on Plaintiffs' property's but instead, about one-half to two-thirds of the driveway actually sat on the Anderson-Tobin property. Id. at ¶ 3.[1] Anderson-Tobin told the selling agent that she allowed the prior owner of Plaintiffs' property to use the driveway. Id. at ¶ 5. In the initial listing of Plaintiffs' property, the seller's agent noted that the driveway encroached on the neighboring

_____

[1] As described by Plaintiffs, the driveway is a system of retaining walls and fill dirt that takes a car from a country road down a "deep" slope to the Plaintiffs' property. Id. at ¶ 8.

2 - OPINION & ORDER

lot, but that information was later erased.  Id. at ¶ 6.  Anderson-Tobin realized that the listing no longer contained the information about the driveway and then marked the survey stake in the driveway showing the location of the lot line with a hot pink spray paint arrow.  Id.  Later, the arrow was erased.  Id.

When Plaintiffs saw the sale listing, it did not disclose any issues with access, driveways, lot lines, or encumbrances.  Id. at ¶  8.  Plaintiffs apparently bought the property unaware of the driveway issue.  Later, a tree fell on the house and as a result, Plaintiffs learned of problems with the foundation and the well.  Id. at ¶ 12.  Plaintiffs had to install a temporary driveway for a new house to be constructed.  Id.

Plaintiffs submitted a claim under their title insurance policy on June 22, 2011.  Id. at ¶ 9.  Defendant denied the claim on September 29, 2011 due to the "survey exclusion."  Id.; see also Ex. B1 to Compl. at 2-3 (Sept. 29, 2011 claim denial letter citing the exclusion for encroachments which would have been disclosed by a correct survey but which are not shown by public records).  Plaintiffs also filed a civil lawsuit in Clackamas County Circuit Court regarding the failure of the inspection report to disclose that the home was built without a permit or proper foundation and that there were unrevealed issues with the well and the driveway.  Id. at ¶ 11.  That matter was ultimately settled.  Id.  However, Plaintiffs continue to have unreimbursed expenses of $50,000 to build the driveway as well as $28,940 in attorney fees and $4,400 in expert, filing, and other fees which they believe are covered by the policy.  Id. at ¶¶ 10, 11.

Plaintiffs allege that the title insurance policy at issue has an exception from coverage for items that would be disclosed by a proper survey.  Id. at 16.  They further allege that a survey was conducted in 1997 after the driveway and residence on their property was in place and the survey

raised no issue with the driveway.  Id.; Ex. C to Compl.  They contend that neither the survey nor

the public records would have disclosed "this matter[.]"  Id. at ¶ 17.  Based on these facts, they

contend that Defendant breached the title insurance policy by denying their claim.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material

fact are taken as true and construed in the light most favorable to the nonmoving party."  Am.

Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the

court need not accept conclusory allegations as truthful.  See Warren v. Fox Family Worldwide,

Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory

allegations which are contradicted by documents referred to in the complaint, and we do not

necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations") (internal quotation marks, citations, and alterations omitted).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the

"grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action[.]"  Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4 - OPINION & ORDER

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(internal quotation marks omitted). Additionally, "only a complaint that states a plausible claim

for relief survives a motion to dismiss." Id. at 679. A complaint must contain "well-pleaded

facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at

679.

DISCUSSION

Defendant argues that based on the allegations in the Complaint, the insurance policy, and

documents Defendant seeks to have judicially noticed under Federal Rule of Evidence 201,

Plaintiffs cannot establish that Defendant breached the title insurance policy. According to

Defendant, it is clear that the policy disallows coverage for claims based on an encumbrance

which would have been revealed by a survey and that Plaintiffs do not dispute that they did not

obtain a survey when they purchased the property. Because Defendant's argument relies on

documents not filed with the Complaint, I address the request for judicial notice first.

I. Request for Judicial Notice

On a motion to dismiss, the court may consider materials incorporated into the complaint

or matters of public record without converting the motion into a motion for summary judgment.

Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, Plaintiffs refer to the

following documents in the First Amended Complaint and also attach them as exhibits to that

pleading: (1) Plaintiffs' tender of their claim under the title insurance policy; Ex. B1 to First Am.

Compl. at 1; (2) Defendant's letter denying coverage; Id. at 2-3; (3) the Preliminary Commitment

for Title Insurance; Ex. B2 to First Am. Compl.; (4) an October 1997 Survey showing various tax

lots in Clackamas County; Ex. C to First Am. Compl. at 1; and (5) an enlargement of that 1997

survey; Id. at 2.  Because Plaintiffs themselves refer to these documents and attach them to their First Amended Complaint, they are properly considered in resolving the motion to dismiss.

      If documents are not actually attached to the complaint, the court may still consider them in connection with a motion to dismiss "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Eisenberg, 593 F.3d at 1038.  Defendant submits the title insurance policy as an exhibit to its request for judicial notice.  Regardless of whether an insurance policy is a proper subject for judicial notice under Rule 201, the doctrine of incorporation by reference explained in Eisenberg applies here.  The breach of contract claim alleges that Defendant breached this title insurance policy.  The First Amended Complaint expressly cites to the policy.  Consideration of the policy language will be required to resolve the claim.  Thus, the First Amended Complaint necessarily relies on the insurance policy.  Further, there is no challenge to the document's authenticity and there are no disputed issues regarding the relevance of the policy.  The policy is properly considered in resolving the motion to dismiss.

      Defendant also requests that the Court take judicial notice of two other documents:  the complaint Plaintiffs filed in Clackamas County Circuit Court and the General Judgment of Dismissal of that action.  Specifically, Defendant points to certain allegations in the Clackamas County Complaint that Plaintiffs did not obtain a survey and that as a result, the title insurance policy did not cover their claim.  See Ex. E to Def.'s Req. for Jud. Notice at ¶¶ 11, 18, 20, 23, 24 (asserting, inter alia, that Plaintiffs' real estate agent and the seller's agent failed to inform Plaintiffs of the need to obtain a location survey to protect their interests in the title insurance

6 - OPINION & ORDER

policy and to make the policy useful, and that a tax map instead of a location survey was used in conjunction with the sale, causing Defendant to deny coverage for the driveway issue).

Defendant notes that Plaintiffs refer to the Clackamas County lawsuit in the First Amended Complaint. First Am. Compl. at ¶ 11. Defendant contends that judicial notice of the facts alleged by Plaintiffs alleged in the Clackamas County case is required to prevent Plaintiffs from taking inconsistent positions in litigation.

While a court may properly take judicial notice of public records under Rule 201, including court records, judicial notice of factual findings made by another court or of factual assertions made by a party in those court records is not appropriate. For example, in Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002), the Ninth Circuit judicially noticed a state court appellate decision and related briefs to determine, in the context of analyzing an issue preclusion question, whether an issue had been necessarily decided or actually litigated. See also Triqueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (taking judicial notice of documents filed in state court habeas proceeding).

In contrast, in Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001), the Ninth Circuit held that the district court erred when it relied on judicially noticed facts subject to dispute in support of the district court's dismissal of a 42 U.S.C. § 1983 claim. The Ninth Circuit stated:

> A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Thus, the district court had authority under Rule 201 to take judicial notice of the fact of the extradition hearing, the fact that a Waiver of Extradition was signed by Kerry Sanders, and the fact that Kerry Sanders purportedly waived his right to challenge his extradition to New York as "Robert

7 - OPINION & ORDER

Sanders." The court may also have had the authority to do so because plaintiffs' First Amended Complaint repeatedly refers to the extradition process that Kerry Sanders underwent, and arguably incorporates the fact of the extradition hearing and the waiver by reference.

But the court did more than take judicial notice of <u>undisputed</u> matters of public record. The court took judicial notice of <u>disputed</u> facts stated in public records.  Indeed, the court relied on the validity of Kerry Sanders's Waiver of Extradition in dismissing plaintiffs' § 1983 claims at the pleading stage.  As the district court stated: "Sanders personally waived his right to contest extradition and informed the court and counsel that he was, in fact, the Robert Sanders sought in New York."  On this basis, the court concluded that "the 'moving force' behind the misidentification of [Kerry Sanders] was his waiver of extradition and his right to raise the issue of identity at his extradition hearing."

On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.  Here, the district court incorrectly took judicial notice of the validity of Kerry Sanders's waiver, which was as yet unproved.

<u>Id.</u> at 689-90 (citations, footnote, and internal quotation marks omitted).

Thus, while the court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated, <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006), the court may not take judicial notice of facts presented in those documents or in court opinions for the purpose of establishing those facts in the case currently before it.  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1114 (9th Cir. 2003) (citing <u>M/V Am. Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th Cir. 1983) ("a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.")).

Following these principles, I take judicial notice of the fact that Plaintiffs filed a

8 - OPINION & ORDER

Complaint in Clackamas County Circuit Court, and to the extent it is relevant, the nature of the claims brought in that case. I also take judicial notice of the General Judgment of Dismissal. However, it is inappropriate to take judicial notice of the factual assertions made in the Clackamas County Complaint as a way of establishing essential facts in the present case.

Defendant's argument regarding Plaintiffs taking inconsistent positions in litigation raises issues of judicial and evidentiary admissions as well as judicial estoppel. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (internal quotation marks omitted). "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." Id.

Although "[a]llegations in a complaint are considered judicial admissions[,]" Hakopian v. Mukasey, 551 F.3d 843, 846 (9th Cir. 2008), a party is conclusively bound by factual allegations in his or her pleadings only for purposes of the case in which the admissions are made. E.g., BNSF Ry. Co. v. O'Dea, 572 F.3d 785, 788 n.4 (9th Cir. 2009) (citing a Fifth Circuit case for the proposition that judicial admissions in an action do not extend to other actions); Aginsky v. Farmers Ins. Exchange, 409 F. Supp. 2d 1230, 1236 (D. Or. 2005) ("The rule that an admission of fact in a pleading is a judicial admission applies only if the admission is made in the same judicial proceeding") (internal quotation marks omitted); see also Higgins v. Mississippi, 217 F.3d 951, 954 (7th Cir. 2000) ("a judicial admission binds only in the litigation in which it is made"). Consequently, any assertions of fact made by Plaintiffs in the Clackamas County Complaint do not bind Plaintiffs in the instant case. Instead, such assertions are considered

"evidentiary admissions" which can be explained or disputed.  E.g., Higgins, 217 F.3d at 954-55 (contrasting a binding judicial admission with a non-binding evidentiary admission which is "one more bit of evidence"); Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1432 (10th Cir. 1990) (explaining that allegations contained in a pleading from separate litigation may be used as evidence of impeachment under Federal Rule of Evidence 613 or statements against interest under Federal Rule of Evidence 801).  Because the allegations of fact in the Clackamas County Complaint are non-binding "evidentiary admissions," Defendant cannot rely on them in support of this motion.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine is not limited to assertions of fact and it is not limited to assertions made or positions taken in the same litigation but may be invoked to bar litigants from making incompatible statements in two different cases.  See id. at 782-83; see also Helfand v. Gerson, 105 F.3d 530, 535 (9th Cir. 1997) (judicial estoppel applies to a party's stated position regardless of whether it is an expression of intention, a statement of fact, or a legal assertion).

The court should consider at least three factors in determining whether to apply the doctrine:  (1) whether a party's later position is clearly inconsistent with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750 (2001)
(indicating that these three factors are not exclusive and that additional considerations may
inform the application of the doctrine in specific factual contexts) (internal quotation marks
omitted). As to the second factor, the Court explained that "[a]bsent success in a prior
proceeding, a party's later inconsistent position creates no risk of inconsistent determinations."
Id. (internal quotation marks omitted).

I decline to apply the doctrine of judicial estoppel to the following assertions made in
Plaintiffs' Clackamas County Complaint: (1) Plaintiffs were denied coverage for the driveway
problem because a tax map instead of a location survey was used; (2) the title insurance policy
was not applicable; (3) Plaintiffs were never informed of the need to get a location survey to
protect their interests in the title insurance policy and to make the policy useful; (4) a seller's
agent owes a duty to disclose material facts known to the seller's agent and not reasonably
ascertainable to a party such as a report and identification of the survey stake embedded in the
driveway showing the only driveway access is on the neighbor's property and was being used
subject to permission and with no legal right to use; and (5) at no time were Plaintiffs instructed
about their option to have a location survey performed for the title insurance policy to give
protection if a driveway issue ever emerged. See Def.'s Mot. to Dismiss at 10 (citing to these
factual assertions).

First, these assertions are not necessarily inconsistent with the assertions Plaintiffs make
in the First Amended Complaint. In the instant case, Plaintiffs rely on a 1997 survey to contend
that Defendant's denial of the claim under the title insurance policy is a breach of the insurance
contract. This does not directly contradict their prior assertion in the Clackamas County case that

11 - OPINION & ORDER

they were denied coverage for failure to procure a location survey at the time of purchase, that

they were not informed of the need to obtain a contemporaneous location survey, that a seller

owes certain duties to a buyer, and that they were never instructed about the option of obtaining a

location survey.  As to the assertion that the title insurance policy does not apply, when the entire

Clackamas County Complaint is considered, this allegation appears to be not a concession by

Plaintiffs that the title insurance policy does not apply, but a restatement of Defendant's position

that because no survey was obtained at the time Plaintiffs purchased the property, the title

insurance policy did not apply.  Therefore, Plaintiffs' assertions in this case are not "clearly

inconsistent" with their assertions in the Clackamas County case.

Second, the Clackamas County case was dismissed by stipulation of the parties with no

indication that any claims were actually adjudicated.  Plaintiffs allege that the case was settled.

Therefore, the record does not establish that Plaintiffs succeeded in persuading a court to accept

their earlier assertions.  Even without addressing the third New Hampshire factor, given that the

first two factors weigh in Plaintiffs' favor, I decline to find Plaintiffs judicially estopped from

asserting the facts in their First Amended Complaint in this case.

II.  Motion to Dismiss

To establish a breach of contract claim, Plaintiffs "must allege the existence of a contract,

its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting

in damage to plaintiff."  Slover v. Or. St. Bd. of Clinical Soc. Workers, 144 Or. App. 565, 570-

71, 927 P.2d 1098, 1101 (1996) (internal quotation marks omitted).  Here, Plaintiffs allege the

existence of the title insurance policy and its relevant terms.  Although not stated exactly in terms

of "full performance," Plaintiffs' allegations about the existence of the 1997 survey are

12 - OPINION & ORDER

understood as an allegation that the "survey exception" exclusion relied on by Defendant does not apply.  Plaintiffs also allege that the alleged breach caused harm to Plaintiffs.

The issue is whether Plaintiffs state a claim for a breach of this insurance policy.  The "question of [insurance] policy interpretation is one of law, and [the court's] task is to determine the intent of the parties[.]"  Groshong v. Mut. of Enumclaw Ins. Co., 329 Or. 303, 307, 985 P.2d 1284, 1287 (1999) (citation omitted); see also Miller v. Ticor Title Ins. Co., 194 Or. App. 17, 21, 93 P.3d 88, 90 (2004) ("A title insurance policy is a contract for indemnity insurance, the interpretation of which presents a question of law"); Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 469, 836 P.2d 703, 706 (1992) ("[T]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.") (internal quotation marks and brackets omitted).  The court determines the parties' intent "from the terms and conditions of the policy."  Groshong, 329 Or. at 307, 985 P.2d at 1287.

Under the section for "Covered Risks," Defendant insures against loss or damage sustained or incurred by the insured by reason of any defect in or lien or encumbrance on the title including insuring against loss from "[a]ny encroachment . . . affecting the Title that would be disclosed by an accurate and complete land survey of the Land."  Ex. D to Def.'s Req. for Jud. Notice at 1.  "The term 'encroachment' includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land."  Id.  A "Covered Risk" is subject to exclusions from coverage as contained in the policy.  Id.  Schedule B to the policy contains certain exclusions from coverage, including for any loss or damage or expenses that arise by reason of "[d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments or any other facts which a correct survey would

disclose."  Id. at 7 (Schedule B4).

In its denial of Plaintiffs' claim, Defendant relied on the exclusion listed at paragraph 4 on Schedule B[2], stating "[t]he claim of the driveway encroachment falls squarely into the above referenced exceptions.  A survey obtained at the time the Insured acquired the property would have shown that the driveway was over the boundary line."  Ex. B1 to First Am. Compl. at 3.

In its motion, Defendant argues that because Plaintiffs failed to obtain a "ALTA" survey, the survey exception in Schedule B4 of the policy applies to deny Plaintiffs' claim.  Because, for the reasons explained above, Plaintiffs' previous assertions of fact in the Clackamas County case are not binding here and I decline to apply the doctrine of judicial estoppel, the record does not establish that Plaintiffs failed to obtain an ALTA survey or any survey.  Thus, this argument is unavailing.

Alternatively, Defendant argues that Plaintiffs cannot rely on the 1997 survey because (1) it was not a survey of Plaintiffs' property; (2) it was from 1997 and was not current; and (3) it actually does show the location of the monuments.  While at least some of these arguments may have merit, I reject them on the current record at this stage of the case.

Defendant first argues that the 1997 survey, although depicting Plaintiffs' property, is a boundary survey, the purpose of which was to monument the boundary of tax lots 2100 and 2102, and is not an ALTA survey of Plaintiffs' property which is tax lot 2101, east of lots 2011 and 2102.  Ex. B2 to First Am. Compl. at 8; Ex. C1 to First Am. Compl.  It seems clear that the

---

[2]  Defendant's September 29, 2011 denial letter from Senior Claims Counsel Amy O'Connell quotes the exclusion slightly differently from the policy submitted by Defendant in its Request for Judicial Notice.  In the letter, O'Connell quotes the exclusion as "[d]iscrepancies . . . encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records."  Ex. B1 to First Am. Compl. at 3.

purpose of the 1997 survey was to determine the boundaries of the two lots to the west of Plaintiffs' lot. Thus, Defendant argues, this was not a survey of Plaintiffs' property. But, the term "survey" is not defined in the policy. Ex. D to Def.'s Req. for Jud. Notice at 3. The coverage section refers to an "accurate and complete land survey of the Land" and the exclusion refers to a "correct survey." None of the relevant terms is defined. Id. The fact that this was a boundary survey of adjoining lots does not, from the face of the policy, indicate one way or the other whether it was an "accurate and complete land survey" or a "correct survey" within the meaning of the policy.

Second, Defendant argues that the 1997 survey was not current. But, the policy language does not explicitly require a current survey, only an accurate and complete or correct one. While the 1997 survey may not be current, that does not, without more, mean it is inaccurate, incomplete, or incorrect. Third, despite Plaintiffs' allegation that the 1997 survey raises "no issue with the driveway," Defendant argues that the survey does show the location of the boundary markers "with one in the driveway[,]" Def.'s Reply at 3, and thus, even relying on the 1997 survey, any loss or damage from the encroachment is excluded from coverage. While the boundary markers for Plaintiffs' lot appear to be shown on the 1997 survey, the driveway does not, at least as far as I can understand the diagram. Thus, on the present record and without further explanation, I cannot accept Defendant's argument.

Without further discussion of the meaning of the terms "accurate and complete land survey of the Land," and "correct survey," the policy language could be considered ambiguous. However, neither party offers, at this point, sufficient argument and support regarding the proper

interpretation to be afforded to the terms.[3]  The insurer has the burden of proving an exclusion to

coverage.  ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co., 349 Or. 117, 127, 241 P.3d 710,

716 (2010), modified on recons. on other grounds, 349 Or. 657, 249 P.3d 111 (2011).  And,

ambiguous terms are construed against the insurer.  Hoffman, 313 Or. at 470-71, 836 P.2d at

706-07.  Without more specific argument on the interpretation of the relevant terms, and in

consideration of Defendant's burden, I cannot discern the intent of the parties to the insurance

contract.  Thus, based on the allegations in the First Amended Complaint, Plaintiffs have pleaded

a breach of contract claim.

CONCLUSION

Defendant's request for judicial notice [11] is granted in part and denied in part.

Defendant's motion to dismiss [9] is denied.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013

_____
Marco A. Hernandez
United States District Judge

_____

[3]  As noted above, in determining the intent of the parties, the court looks at the terms and conditions of the policy.  Groshong,  329 Or. at 307-08, 985 P.2d at 1287.  The court looks first at the plain meaning of the term at issue.  Id. at 308, 985 P.2d at 1287.  If the meaning of the term or phrase at issue "is not, on its face, plain, [the court] proceed[s] to [its] second aid to interpretation[-] . . . examin[ing] the phrase in light of the particular context in which [it] is used in the policy and the broader context of the policy as a whole."  Id. at 312, 985 P.2d at 1289 (internal quotation marks omitted).  If, after application of such analysis, the court determines that the term is ambiguous, the court may then consider extrinsic evidence in interpreting the insurance contract.  Protection Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp., 164 Or. App. 385, 397-98, 992 P.2d 479, 486 (1999).  In the briefing on the motion to dismiss, neither party proceeds through this interpretation analysis.

16 - OPINION & ORDER